UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/7/2021
```

EUGENIA CONGEMI,

                Plaintiff,

   -against-

WAL-MART STORES EAST, LP,

                Defendant.

No. 19-cv-8220 (NSR)
**OPINION & ORDER**

NELSON S. ROMÁN, United States District Judge:

    Plaintiff Eugenia Congemi ("Plaintiff") brought this action against Defendant Wal-Mart Stores East, LP ("Defendant") to recover for personal injuries allegedly sustained by Plaintiff when she slipped and fell at Defendant's store located in Middletown, New York on November 7, 2018.[1] (Complaint ("Compl.") (ECF No. 1-1).) Plaintiff initially filed her Complaint on May 1, 2019 in the Supreme Court of the State of New York, County of Orange. (*Id.*) On September 4, 2019, Defendant removed the action to this Court pursuant to 28 U.S.C.A. §§ 1332, 1441, and 1446. (ECF No. 1.) Now before the Court is Defendant's motion for summary judgment pursuant to Federal Rules of Civil Procedure Rule 56 ("Def.'s Motion"). (ECF No. 23.) Defendant filed a memorandum of law in support of its motion (Defendant's Memorandum of Law ("Def.'s Mem.") (ECF No. 26)), Plaintiff opposed the motion (Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment ("Pl.'s Opp'n Mem.") (ECF No. 22)), and

---

[1] The Complaint alleges that the accident happened on November 8, 2018, however, the ambulance report indicates that the accident occurred on November 7, 2018. (*See* Defendant's Exhibit H, the Town of Wallkill Volunteer Ambulance report, ("Ambulance Rep.") (ECF No. 24-9).)

Defendant filed a reply in further support of its motion (First Reply Memorandum of Law ("Def.'s Reply Mem.") (ECF No. 27)). For the reasons discussed below, Defendant's motion for summary judgment is DENIED.

## BACKGROUND

Allegations are taken from Defendant's Statement of Material Facts submitted pursuant to Local Civil Rule 56.1 ("Def. 56.1") (ECF No. 25), Plaintiff's Response to Defendant's 56.1 Statement ("Pl.'s 56.1 Resp.") (ECF No. 22-1), and the exhibits submitted by the parties.[2] The facts set forth herein are undisputed unless stated otherwise.

On November 7, 2018, Plaintiff, a 78-year-old woman, visited Defendant's Middletown store located at 470 Route 211 E, Middletown, New York, to purchase groceries and vitamins. (Congemi Dep. at 14:9-13; Def. 56.1 ¶ 21; Pl.'s 56.1 Resp. ¶ 21.) Her companion, George Hall, accompanied and drove her to Defendant's store and they arrived sometime in the "late morning, early afternoon." (Congemi Dep. at 13:5-6.) Plaintiff could not recall whether it was sleeting, snowing, or raining that day. (Congemi Dep. at 17:21.) However, Plaintiff remembers that it was "darn cold." (Congemi Dep. at 33:15.) According to Hall, "[i]t was raining" and the rain "got worse." (Hall Dep. at 9:4-12; Def. 56.1 ¶ 16; Pl.'s 56.1 Resp. ¶ 16.)

Upon arriving at Defendant's store, Hall parked his car, retrieved shopping carts, and entered the store along with Plaintiff. (Hall Dep. at 9:19–12:3.) Plaintiff noticed "slush[]" and "pieces of ice" in the parking lot while approaching the store. (Congemi Dep. at 21:6-11, 28:2-

---

[2] Only Defendant submitted exhibits. These exhibit include, in sum: (1) Defendant's Exhibit C, the sworn deposition testimony of Plaintiff ("Congemi Dep.") (ECF Nos. 24-3, 24-4); (2) Defendant's Exhibit D, the sworn deposition testimony of Plaintiff's companion, George Hall, ("Hall Dep.") (ECF No. 24-5); (3) Defendant's Exhibit E, certain Orange Regional Medical Center records ("Orange Regional Medical R.") (ECF No. 24-6); (4) Defendant's Exhibit F and G, certain Westchester Medical Center records, ("Westchester Med. R.") (ECF Nos. 24-7, 24-8); (5) Ambulance Rep.; and (6) Defendant's Exhibit I, a certified weather report ("Certified Weather Rep.") (ECF No. 24-10).

12.) Hall testified that he noticed "clear, muddy color[ed]" ice on the ground upon getting out of the driver's side of the car (Hall Dep. at 10:20), and that it was raining "pretty hard" (Hall Dep. at 28:14-15; Def. 56.1 ¶ 17; Pl.'s 56.1 Resp. ¶ 17). Despite these conditions, Plaintiff and Hall were able to enter the store safely and go their separate ways. (Hall Dep. at 12.) Plaintiff shopped for roughly half an hour before returning to the car alone. (Congemi Dep. at 22:21-24.)

Upon returning to the car, Plaintiff opened the trunk and unloaded her groceries. (Congemi Dep. at 29:19-20.) She then brought her shopping cart back to the corral and walked to the driver's side of the car to unlock the passenger door. (Congemi Dep. at 29:20-25.) As Plaintiff was walking to the driver's side door, she began to feel herself slipping. (Congemi Dep. at 33:23.) She looked down and noticed a "big thing of ice in a puddle." (Def. 56.1 ¶ 12; Pl.'s 56.1 Resp. ¶ 12; Congemi Dep. at 29:25–30:2.) By the time she saw the icy puddle, "it was too late, [she] was down." (Pl.'s 56.1 Resp. ¶ 12; Congemi Dep. at 30:3.) Plaintiff fell between two parked cars, landed with her feet under one car and her head under another, and sustained injuries to her right wrist and right hip. (Congemi Dep. at 34:3-4; Orange Regional Medical Center R. at 1.)

Shortly after Plaintiff fell, an ambulance arrived at Defendant's parking lot and transported Plaintiff to Orange Regional Medical Center. (Ambulance Rep. at 1–2.) After the injury was discovered, Hall was called to the parking lot and found that it was still "drizzling" and "very cold" when he responded to the call. (Hall Dep. at 12:14-17, 41:7; Def. 56.1 ¶ 20; Pl.'s 56.1 Resp. ¶ 20.) Plaintiff testified that she could neither recall whether she was asked about the accident while at Orange Regional Medical Center nor how long she was at Orange Regional Medical Center. (Congemi Dep. at 50:18–51:4.)

Plaintiff was then transferred to Westchester County Medical Center to receive treatment for her right hip and wrist fractures. (Westchester Medical R. at 4.[3]) This treatment included hydromorphone – a prescription opioid medication commonly used for treatment of acute pain. (*Id.*) Plaintiff later testified that she was heavily medicated and kept "nicely down" at Westchester County Medical Center. (Congemi Dep. at 51:10.)

During her treatment, Plaintiff may have admitted to falling as a result of her own error using new shoes. The Westchester Medical records reflect that "patient [*i.e.*, Plaintiff] reports being injured earlier today when she was walking outside and tripped over her boots and fell" (Westchester Medical R. at 4), and that she "reports she was walking in the morning with her new shoes which were heavy, tripped onto something and fell" (Westchester Medical R. at 17). This admission is at least somewhat consistent with her later testimony that, on the day of the accident, she was wearing new Ugg boots. (Def. 56.1 ¶ 6; Pl.'s 56.1 Resp. ¶ 6; Congemi Dep. at 16:20–17:7.) Regardless, Plaintiff denies that she told medical care providers that she tripped because of her new shoes. (Pl.'s 56.1 Resp. ¶ 4; Congemi Dep. at 73:18.)

Plaintiff and Defendant dispute the prevailing weather conditions at the site of the accident on November 7, 2018. (Def. 56.1 ¶ 23–29; Pl.'s 56.1 Resp. ¶ 23–29). On the one hand, Defendant contends that, during the relevant time, there was neither rain nor sufficiently cold weather to support the existence of ice. In support of this contention, Defendant submits a certified[4] climatological report taken from the Orange County Airport at 500 Dunn Road,

---

[3] Westchester Medical R. is an abridged version of the relevant medical records and only contains two out of twenty-four total pages. The pages that are part of this record are pages 4 and 17.

[4] Plaintiff disputes that the climatological data are certified. This dispute is immaterial to the resolution of the instant motion. In any event, Defendant's Exhibit I shows that the weather records were certified by Nancy A. Ritchey, the Records Custodian Data Administrator and Mary S. Wohlegemuth, Director of the National Centers for Environmental Information attested

Montgomery, New York, allegedly 8.5 miles away from the site of the accident. (Def. 56.1 ¶ 22–23). The climatological data submitted by Defendant suggests that on November 7, 2018, the day of the accident, there was no rainfall or other precipitation.[5] (Certified Weather Rep. at 2). Though unclear, the Certified Weather Report appears to indicate that there was rain, mist, and fog detected at the weather station on November 6, 2018, one day prior to accident. (Certified Weather Rep. at 2). The data also establishes that, on November 7, 2018, the weather station did not detect weather falling below 32 degrees Fahrenheit, as would be necessary for rainwater to freeze. (Def.'s 56.1 at ¶ 28). On the other hand, as described above, Plaintiff presents testimonial evidence—her own and her companion's—that it was cold, raining, and that ice was present. She also contends that the certified climatological report is neither admissible nor credible because the report is not certified and data from other nearby weather stations (that she failed to submit and is therefore not in the current record) purportedly shows precipitation and low temperatures that could have led to ice at the site of the accident. (Pl.'s 56.1 Resp. ¶ 23–24).

to the same and affixed the seal of the Department of Commerce. Plaintiff further disputes that there is an index interpreting the meaning of the codes or abbreviations in the weather report, however, Exhibit I contains a comprehensive dataset documentation. (Certified Weather Rep. at 22–34). Finally, Plaintiff disputes that the report was generated within 8.5 miles of the accident site at Defendant's store, arguing that Defendant submits no evidence measuring the distance between the Orange County Airport's and the Middletown Walmart store.

[5] Plaintiff disputes Defendant's statement that there was no precipitation on November 7, 2018, though it is unclear on what grounds. Plaintiff states that the weather stations at Warwick, Wurstboro, Pine Bush, Walden, and Montgomery measured at least some precipitation on November 7, 2018. (Pl.'s 56.1 Resp. at ¶ 24). However, Plaintiff does not submit any exhibit in support of this statement, nor does Plaintiff supplement the statement with any attachment.

## LEGAL STANDARD

### I.       Fed. R. Civ. P. 56 Standard

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 317 (1986). A "genuine" dispute exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" when it "affect[s] the outcome of the suit under the governing law." *Id.*

The moving party bears the initial burden of demonstrating the absence of a material fact. *Celotex*, 477 U.S. at 323. Once the movant fulfills its preliminary burden, the onus shifts to the nonmovant to "present evidence sufficient to satisfy every element of the claim" and to "designate specific facts showing that there is a genuine issue for trial." *Holcomb v. Iona Coll.*, 521 F.3d 131, 137 (2d Cir. 2008). The non-moving party must do more than merely "show that there is some metaphysical doubt as to the material facts." *Matsushita Electrical Industrial v. Zenneth Radio*, 475 U.S. 574, 586 (1986). Accordingly, if the non-moving party fails to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," summary judgment must be granted. *Celotex Corp.*, 477 U.S. at 317.

In ruling on a motion for summary judgment, the Court "must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 150 n.18 (2000). Additionally, the Court is "required to resolve all ambiguities and draw all permissible factual

inferences in favor of the party against whom summary judgment is sought." *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004).

## II.        Burden of Proof on Summary Judgment

New York substantive law governs the slip-and-fall claim in this case. *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1983). However, "the issue of what burden a movant for summary judgment bears when the ultimate burden of proof lies with the non-movant is procedural rather than substantive, and, consequently, that issue is decided by federal law, rather than state law." *Tingling v. Great Atl. & Pac. Tea Co.*, 2003 U.S. Dist. LEXIS 22725, at *2 n.2 (S.D.N.Y. Dec. 15, 2003).

Unlike New York law,[6] on the federal level, the movant may be "discharged by 'showing' . . . that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp*, 477 U.S. at 325; *Goenaga v. Mar. of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995). The movant need not "raise a prima facie case . . . in federal court." *Hughes v. United States*, No. 12 CIV. 5109 CM, 2014 WL 929837, at *4 (S.D.N.Y. Mar. 7, 2014). Rather, it is the "non-moving party, [who] bears the burden of showing a genuine dispute of material fact." *Cruz v. Target Corp.*, No. 13 CIV. 4662 NRB, 2014 WL 7177908, at *2 (S.D.N.Y. Dec. 17, 2014).

In the instant case, this Court applies the federal summary judgment standard as described above. Accordingly, once the movant has shown that no material fact is in dispute, the

---

[6] New York's burden of proof on a summary judgment standard differs from the federal standard. *Cousin v. White Castle Sys., Inc.*, No. 06-CV-6335JMA, 2009 WL 1955555, at *4 n.2 (E.D.N.Y. July 6, 2009). In New York, the movant in a slip-and-fall case is required to produce "affirmative evidence that it neither created the hazard nor had constructive notice of it." *Doona v. OneSource Holdings, Inc.*, 680 F. Supp. 2d 394, 400 (E.D.N.Y. 2010) (quoting *White Castle Sys., Inc.*, 2009 WL 1955555, at *4 n.2). New York courts only look to the sufficiency of the non-movant's case once the movant has met his burden. *Id.* Thus, the New York summary judgment standard is more "plaintiff-friendly." *Id.*

burden shifts to the non-movant to demonstrate that a genuine dispute of material fact exists. Fed. R. Civ. P. 56(e)(2).

## DISCUSSION

Under New York law, a negligence cause of action consists of three elements: "(i) a duty owed to the plaintiff by the defendant; (ii) breach of that duty; and (iii) injury substantially caused by that breach." *See e.g. Lombard v. Booz-Allen & Hamilton, Inc.*, 280 F.3d 209, 215 (2d Cir. 2002). To establish a premises liability slip-and-fall case in particular, besides injury and causation, the plaintiff must show that (1) a dangerous or defective condition existed, (2) the defendant either created the condition or had actual or constructive notice of it; and (3) the defendant failed to take reasonable measures to protect Plaintiff from the condition. *See, e.g.*, *Calderon v. J.C.Penney Corp., Inc.*, No. 14-CV-5706 (CM), 2017 WL 2558805, at *2 (S.D.N.Y. June 6, 2017); *Murphy v. State*, 188 A.D.3d 1330, 1331 (3d Dep't 2020); *Acevedo v. New York City Transit Auth.*, 97 A.D.3d 515, 516 (2d Dep't 2012); *see also* Lee S. Kreindler, et al., New York Law of Torts § 12:3 (2019) ("For a landowner to be liable to a person on the land for an injury caused by a condition on the land, the plaintiff must establish three basic elements (aside from causation and injury): a dangerous condition existed on the land; the owner created or had notice of the condition; and the owner failed to take reasonable measures to protect persons on the land from the condition.").

Here, Defendant moves for summary judgment on the ground that Plaintiff has not established the existence of a dangerous condition[7] for three reasons. *First*, Defendant contends

---

[7] Defendant does not argue in the alternative that Plaintiff failed to establish actual or constructive notice of a dangerous condition. Accordingly, the Court need not *sua sponte* address the merits of this aspect of Plaintiff's claim. In any event, Plaintiff can point to testimony—*e.g.*, the testimony of nonparty Hall regarding the conspicuous nature of the disputed ice—that raises a genuine dispute of material fact whether Defendant was on constructive notice. *See Walters v. Costco Wholesale Corp.*, 51 A.D.3d 785, 786 (2d Dep't 2008) (holding that deposition testimony

that Plaintiff presented insufficient evidence to establish the existence of a dangerous condition. *Second*, Defendant argues that certain climatological data indicating precipitation and weather during the relevant period preceding and during the accident is sufficient to establish that there was no ice at the site of the accident, and thus no hazardous condition. *Third*, Defendant argues that Plaintiff's own contradictory statements provides a sufficient basis to conclude that no ice existed. Though a close call, the Court concludes that Defendant is not entitled to summary judgment on any of the three grounds argued by Defendant and addresses each argument in turn.

### I.      Whether Plaintiff's Testimony Is Sufficient to Establish the Existence of a Hazardous Condition

Defendant argues that Plaintiff cannot establish or even raise an issue of fact as to the presence of a dangerous condition of ice in Defendant's parking lot. (Def.'s Mem.at 5.) The gravamen of Defendant's position is that the presence of ice cannot be established solely by Plaintiff's and Hall's "unconvincing" testimony. (Def.'s Reply Mem. at 4.) Plaintiff argues that her deposition testimony along with Hall's testimony is enough to raise a triable question of fact as to the existence of ice. (Pl.'s Opp'n at 10.) The Court agrees with Plaintiff.

"Whether a dangerous or defective condition exists on the property so as to create liability depends on the particular circumstances of each case and is generally a question of fact for the jury." *Acevedo*, 97 A.D.3d at 516. Testimony from one or more witnesses attesting to the existence of a dangerous condition is typically sufficient to establish an issue of fact as to whether there was a dangerous condition at the spot of a fall. *See, e.g.*, *Nussbaum v. Metro-N. Commuter R.R.*, 994 F. Supp. 2d 483, 492 (S.D.N.Y. 2014) (holding that testimony from Metro-

---

that ice was visible immediately after the plaintiff's fall, and an incident report stating that another person had fallen on ice in the same general vicinity forty-five minutes earlier raised a triable issue of fact as to whether the appellant had constructive notice of the existence of the hazardous condition for a sufficient length of time to have discovered and remedied it).

North train conductor that it was not unusual to see white residue on floor of train cars along with expert affidavit that soap solutions can decrease friction was sufficient to raise triable question of fact as to presence of a dangerous condition) *aff'd*, 603 F. App'x 10 (2d Cir. 2015), and *aff'd*, 603 F. App'x 10 (2d Cir. 2015); *see also Crawford v. United States*, No. 114CV1336LEKCFH, 2016 WL 7190567, at *7 (N.D.N.Y. Dec. 12, 2016) (finding genuine dispute of fact regarding existence of ice because "Crawford's own affidavit also disputes NYSARC's theory [that no ice existed where it stated that] 'When I was on the ground I realized that I was lying in ice that had frozen on the surface of the parking lot'").

Indeed, even where meteorological evidence cuts against the existence of a dangerous condition, courts have held that testimony averring that a dangerous condition existed in contradiction of meteorological records is sufficient to overcome a motion for summary judgment. *See, e.g.*, *Raimond v. United States*, No. 02-CV-0620E(SR), 2004 WL 2108364 (W.D.N.Y. Sept. 21, 2004) (holding that "the conflict between Raimond's testimony and the US' expert report establishes a genuine issue of material fact that must be resolved by a trier of fact"); *Bellomo v. United Arab Shipping Co. (S.A.G.)*, 863 F. Supp. 107, 110–11 (E.D.N.Y. 1994) (finding genuine dispute of fact as to existence of dangerous condition despite weather reports "in light of Plaintiff's account of the conditions as he boarded the ship").

Here, Plaintiff and Hall's sworn deposition testimony is sufficient to raise a genuine dispute of fact as to the existence of a dangerous condition. Plaintiff testified that, prior to entering the store, she saw "slush" throughout the parking lot (Congemi Dep. at 20:20-25, 21:2-5) and that, upon returning to the car after shopping, she saw and tripped upon "a big thing of ice in a puddle" (Congemi Dep. At 29:25–30:1). Similarly, nonparty Hall testified that he saw a formation in the parking lot that consisted of ice and a puddle of shallow muddy water. (Hall

Dep. At 26:3-5.) Consistent with the authority discussed above, this testimony is sufficient to raise a genuine dispute of material fact—*i.e.*, Plaintiff has testimonial evidence that ice existed whereas Defendant has presented evidence that ice could not have existed due to prevailing weather conditions. As discussed further below, a triable issue exists notwithstanding climatological data relied upon by Defendant.

## II.     Whether Defendant's Climatological Report is Sufficient to Grant Summary Judgment

Defendant also argues that summary judgment should be granted in its favor because there can be no genuine dispute of fact that ice was not present at the site of the accident because certified climatological data summarizing the daily and hourly atmospheric temperatures and weather conditions for the month of November 2018 taken from the Orange County Airport indicates that it was not cold enough for ice to form on the day of the accident. (*See* Def.'s Mem. at 4; Certified Weather Rep.) As discussed below, the Court concludes that a genuine dispute of fact exists, notwithstanding Defendant's climatological data, because: (1) the climatological data is not supported by an expert report; (2) the Court is unable to weigh the persuasive force of the climatological data as Defendant has not established the distance between the site where the data was collected and the site of the accident; and (3) even if the data was collected 8.5 miles away from the site of the accident, the Court cannot conclude as a matter of law that ice did not exist as weather conditions may vary between locations separated by 8.5 miles.

*First*, New York courts have found that defendants need to present both climatological data and expert testimony in order to establish the absence of a hazardous condition on a motion for summary judgment. For example, the court in *Rodriguez v. Woods* held that,

> Summary judgment in a snow or ice case is proper where a defendant demonstrates, through climatological data and expert opinion, that the weather conditions would preclude the existence of snow or ice at the time of the accident. Accordingly, because it failed to offer an expert opinion, in addition to the

meteorological records, the City's motion should have been denied without regard
to the sufficiency of plaintiff's papers in opposition.

121 A.D.3d 474, 475 (1st Dep't 2014) (citations omitted) (internal quotation marks omitted).

Here, Defendant did not submit an expert opinion to support and interpret the climatological

records produced in this case. The failure to provide expert evidence alone is a sufficient basis to

deny Defendant's motion at this time.[8]

*Second*, even if expert testimony was unnecessary to prevail on summary judgment, the

Court cannot find an absence of disputed material facts because the parties dispute the distance

between the location where the climatological data was collected and the site of the accident,

which goes directly to the dispositive force of a weather report. The Certified Weather Report

states that the data contained therein was collected at Orange County Airport, but there is no

factual affidavit establishing the distance between that site and the accident site, and Plaintiff

disputes Defendant's account that the weather station is 8.5 miles away from the accident site.

The distance between the site of a weather report and the site of an ice-related slip and fall

accident is relevant because it bears on the dispositive force of the weather report. *See, e.g.*,

*Bellomo*, 863 F. Supp. at 110–111; *Duffy-Duncan v. Berns & Castro*, 45 A.D.3d 489, 490 (1st

Dep't 2007) ("climatological reports . . . evidencing temperature readings . . . taken in

neighboring counties . . . are not dispositive as to the conditions at the site of plaintiff's fall in the

Bronx.").

*Third*, even assuming *arguendo* that the climatological data was taken at a location 8.5

miles away from the accident site, as Defendant argue, it would be insufficient to demonstrate

---

[8] The Court appreciates that expert discovery has been held in abeyance pending
resolution of the instant motion. (Minute Entry dated July 28, 2020.) The Court may entertain a
motion at a later date concerning the dispositive force of Defendant's climatological data *along
with* admissible expert testimony after the appropriate record has been developed.

weather conditions at the site of the accident. Courts often find a genuine issue of material fact even when the weather records were collected as close as one mile away from the accident site. *See Bellomo*, 863 F. Supp. at 110–111 (finding that a genuine issue of material fact existed where the defendant submitted weather records from a station one mile away to demonstrate no ice would have formed on the ship, but the plaintiff testified that a layer of new snow masked a layer of ice on the ship); *Raimond*, 2004 WL 2108364, at *2 (holding that the "United States' expert's report is insufficient to demonstrate the weather conditions at the hospital when Plaintiff fell" as "climatological conditions may vary from one locale to another situated three to five miles away."); *Bryndle*, 132 F. Supp. 3d at 499 (use of climatological reports six to ten miles away from the accident site are "wholly speculative."). Accordingly, even if this Court were to credit Defendant's averment that the weather station collected data 8.5 miles away from the accident site, it would still deny Defendant's motion for summary judgment.

Though unclear whether this is a separate argument, Defendant encourages this Court to take judicial notice of: (1) the temperature at an indeterminate location (it is unspecified whether Defendant requests the Court to take notice the temperature at the site of the accident or the site where the climatological data was collected) and, (2) the fact that water freezes at 32 degrees Fahrenheit. (Def.'s Mem. at 7). The Court takes judicial notice of the fact that water freezes at 32 degrees Fahrenheit and would be inclined to take judicial notice of the temperature recorded *at the site where the climatological data was collected*. The Court would not take judicial notice of the temperature *at the site of the accident* based on the climatological report at issue here insofar as that would be inconsistent with caselaw establishing that weather data collected 8.5 miles away from a slip and fall accident is insufficient to establish an absence of disputed material facts. *See Bellomo*, 863 F. Supp. 107 at 110–111; *Raimond*, 2004 WL 2108364, at *2; *Bryndle*,

13

132 F. Supp. 3d at 499. Accordingly, Defendant's motion for summary judgment is denied to the extent it is premised on either the argument that the presence of ice is subject to judicial notice or based on the data contained in the Certified Weather Report.

### III. Whether Plaintiff's Contradictory Statements Are Sufficient to Grant Summary Judgment

Defendant's final argument is that it is entitled to summary judgment because the Westchester Medical Records contradict Plaintiff's self-serving testimony that she tripped on ice and as a result there is no genuine dispute of material fact as to the nonexistence of ice at the site of the accident. (Def.'s Mem. at 2.) The two statements in the Westchester Medical Records contradicting Plaintiff's deposition testimony that she fell consist of the following: (1) "[t]he patient reports being injured earlier today when she was walking outside and tripped over her boots and fell," and (2) "[patient] reports she was walking in the morning with her new shoes which were heavy, tripped onto something and fell." Plaintiff argues that the statements are inadmissible and, in any event, not dispositive. (Pl.'s Opp'n at 5-8.) The Court finds that the medical records may be admissible under Fed. R. Evid. 801(d)(2) and 803(4) but, in any event, the statements contained therein are insufficient to grant summary judgment in favor of Defendant.

#### A. *Whether Medical Records are Admissible*

Plaintiff contends that the statements in the Westchester Medical Records suggesting that Plaintiff reported falling due to tripping over her shoes are inadmissible hearsay statements. Pursuant to Rule 801(d)(2), a statement is admissible non-hearsay if "[t]he statement is offered against an opposing party and: (A) was made by the party in an individual and representative capacity[.]" Fed. R. Evid. 801(d)(2). The statement, "[t]he patient reports being injured earlier today when she was walking outside and tripped over her boots and fell," is a party admission

under 801(d)(2). Nonetheless, although Plaintiff's "admission itself is not hearsay. . . the . . . record of that statement [is] hearsay and can only be admitted [under an] exception[] to the hearsay rule." *Romano v. Howarth*, 998 F.2d 101, 108 (2d Cir. 1993).

Under Federal Rules of Evidence 801 and 802, hearsay is not admissible if offered to prove the truth of the matter asserted in the statement. However, there are a number of exceptions to this proposition. As is relevant here, certain statements made for medical diagnosis or treatment, even if hearsay, are admissible pursuant to Fed R. Evid. 803(4) if the following elements are met: "[the statement] (A) is made for--and is reasonably pertinent to--medical diagnosis or treatment; and (B) describes medical history; past or present symptoms or sensations; their inception; or their general cause." Fed R. Evid. 803(4). According to Plaintiff, the statement that she "tripped over her boots and fell" does not alter her diagnosis or treatment and does not describe medical history or the general cause of her fractures. (Pl.'s Opp'n Mem. at 6.)

Though the Court need not, and does not, reach the issue, the Court would be inclined to find that the at-issue statements are admissible under Fed R. Evid. 803(4). With respect to the requirements of Fed. R. Evid. 803(4)(B), the alleged statements very clearly describe the general cause of Plaintiff's injury and "[d]eclarant statements about the nature of an injury and how it occurred comfortably fit within the Rule 803(4)(B) parameters." Jeffrey Bellin, 30B Fed. Prac. & Proc. Evid. (Wright & Miller) § 6843 (2021 ed.). With respect to the requirements of Fed. R. Evid. 803(4)(A), statements concerning the physical events precipitating a patient's slip and fall have been considered reasonably pertinent to a medical diagnosis insofar as *how* a person fell is at least somewhat suggestive of whether an underlying medical condition caused the fall. *See, e.g.*, *Sanders v. Ritz-Carlton Hotel Co., LLC*, No. 05 CIV. 6385 (PKL), 2008 WL 4155635, at *2

(S.D.N.Y. Sept. 9, 2008) (holding that references in plaintiff's medical records indicating that plaintiff "tripped" were admissible under 803(4) because such information is "medically relevant" to plaintiff's treatment and diagnosis).

At this stage, the Court declines to rule as to the admissibility of the statements because, even if the statement were admissible, it would not change the result of this motion. Instead, Plaintiff may seek the exclusion of these statements through a motion in limine at a later date after this Court has set a briefing schedule for pre-trial submissions.

> B.   *Whether Contradictory Evidence Eliminates any Genuine Dispute of Material Fact.*

Even assuming *arguendo* that the statements are admissible, the Court declines to grant summary judgment in favor of Defendant because the contradictory evidence regarding how Plaintiff fell is not sufficient to eliminate a genuine dispute of material fact. This is a close call and Defendant likely has a strong argument to be made to a jury that it is far more credible that Plaintiff tripped over her own feet as it is more consistent with certain undisputed evidence than a slip and fall over ice. Nonetheless, the Court concludes that the inconsistencies at issue here go to the weight of the evidence and preclude summary judgment.

On the one hand, "The rule is well-settled in this circuit that a party may not, in order to defeat a summary judgment motion, create a material issue of fact by submitting an affidavit disputing his own prior sworn testimony." *Trans-Orient Marine Corp. v. Star Trading & Marine, Inc.*, 925 F.2d 566, 572 (2d Cir.1991); *see also Miller v. City of New York*, 214 A.D.2d 657, 625 N.Y.S.2d 271 (2d Dep't 1995) (reversing denial of summary judgment for defendant where plaintiff's deposition testimony that there was no indication the sidewalk had been shoveled contradicted her affidavit submitted in opposition to defendant's motion, which stated that the sidewalk had been shoveled). On the other hand, on a motion for summary judgment, the Court

cannot assess issues of credibility; such questions of fact are for a jury to resolve. *See Springer v. Cone*, 111 A.D.3d 1226, 975 N.Y.S.2d 818 (2013) (affirming a denial of a motion for summary judgment in a slip and fall case where parties presented contradictory testimony regarding whether defendant had instructed plaintiff to use a wheelchair and ramp rather than carrying defendant's daughter down the stairs); *Alvarez v. New York City Hous. Auth.*, 295 A.D.2d 225, 744 N.Y.S.2d 25 (2002) (holding that any inconsistencies in the plaintiff's several accounts of her slip and fall incident go to "the weight of the evidence, not its competence, and the value to be accorded to the evidence is a matter for resolution by the trier of fact.").

Here, the medical records certainly weaken the weight of Plaintiff's deposition testimony that she tripped over ice. Indeed, a reasonable jury could easily find that Plaintiff lacks credibility and resolve the dispute over the cause of her slipping in favor of Defendant. Nonetheless, the medical records do not amount to prior sworn testimony and do not counsel in favor of granting summary judgment. Moreover, even if the jury believed that Plaintiff advised medical providers that she tripped over her feet, the jury could still credit her testimony that she was heavily medicated while at the hospital, infer that she did not provide an accurate account of how she fell while under the influence of narcotics, and conclude that she in fact tripped on ice. *See United States v. Josephberg*, 562 F.3d 478, 487 (2d Cir. 2009) ("the jury is free to believe part and disbelieve part of any witness's testimony"). At bottom, it would be inappropriate for the Court to assess the credibility of Plaintiff's statement that she tripped over ice at this stage and, accordingly, summary judgment must be denied.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is hereby DENIED. The Clerk of the Court is respectfully directed to terminate the motion at ECF No. 23. The parties are directed to write to Magistrate Judge Andrew E. Krause within three (3) business

days of entry of this Opinion to update Judge Krause as to this Opinion and to schedule a status

conference before Judge Krause.


Dated: September 7, 2021                                              SO ORDERED:
White Plains, New York

                                                            _____
                                                                    NELSON S. ROMÁN
                                                                United States District Judge